UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DORY WEBB,

     Plaintiff,

v.                                         Case No. 1:20-cv-1206
                                         Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant,

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her application for disability insurance benefits (DIB).

On January 24, 2019, plaintiff filed an application for DIB alleging a disability onset date of January 11, 2019.[1]  PageID.46.  Plaintiff identified her disabling conditions as: anxiety; depression; back pain with numbness; fracture of the subchondral lateral tibeal plateau; and morbidly obese.  PageID.234.  Prior to applying for DIB, plaintiff completed the 12th grade and had past relevant work as an assembler.  PageID.56, 235.  An administrative Law Judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on February 18, 2020.  PageID.46-58.  This decision, which was later approved by the Appeals

---

[1] Plaintiff testified that she fractured her right knee on that date.  PageID.82.  The ALJ noted that, "After falling when getting out of the shower, a January 2019 MRI of the right knee showed subcondral fracture lateral tibial plateau, previous ACL reconstruction, minimal surface chondral fibrillation, and probable red marrow reconversion (Exhibit 2F/5, 54)"  PageID.52..

Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.     LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports

the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286

(6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to

benefits.  A disability is established by showing that the claimant cannot engage in substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months.  *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step

analysis:

> The Social Security Act requires the Secretary to follow a "five-step
> sequential process" for claims of disability.  First, plaintiff must demonstrate that
> she is not currently engaged in "substantial gainful activity" at the time she seeks
> disability benefits.  Second, plaintiff must show that she suffers from a "severe
> impairment" in order to warrant a finding of disability.  A "severe impairment" is
> one which "significantly limits . . . physical or mental ability to do basic work
> activities."  Third, if plaintiff is not performing substantial gainful activity, has a
> severe impairment that is expected to last for at least twelve months, and the
> impairment meets a listed impairment, plaintiff is presumed to be disabled
> regardless of age, education or work experience.  Fourth, if the plaintiff's
> impairment does not prevent her from doing her past relevant work, plaintiff is not
> disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent
> her from doing her past relevant work, if other work exists in the national economy
> that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations

caused by her impairments and the fact that she is precluded from performing her past relevant

work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir.

2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a

significant number of jobs in the economy that accommodate the claimant's residual functional

capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.    ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023, and has not engaged in substantial gainful activity since the alleged disability onset date of January 11, 2019.  PageID.48.  At the second step, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of lumbar spine; osteoarthritis of bilateral knees; right calcaneal spur; and morbid obesity.  *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.50.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she would need the option to stand for five minutes after sitting for 30 minutes and the same in reverse. The claimant can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally balance as defined by the DOT, and occasionally stoop, kneel, crouch, or crawl. She could not be exposed to workplace hazards such as unprotected heights or dangerous moving machinery and should avoid concentrated exposure to extreme cold and vibration.

PageID.51.  The ALJ also found that plaintiff was unable to perform any past relevant work. PageID.56.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level.  PageID.57-58.  Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as document preparer (42,000 jobs), order clerk (48,000 jobs), and information clerk (35,000 jobs).  PageID.57.

Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from January 24, 2019 (the alleged onset date) through February 18, 2020 (the date of the decision).  PageID.58.

## III.    DISCUSSION

Plaintiff contends that the ALJ's residual functional capacity (RFC) findings are contrary to law and not supported by substantial evidence. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments.  20 C.F.R. § 404.1545. The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity."  *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotation marks and brackets omitted).

Plaintiff has raised four errors on appeal to support this claim.

**A.  The ALJ did not consider the medical source opinions as required by 20 C.F.R. § 404.1520c.  Specifically, substantial evidence does not support the finding that the opinions of Charles Wilmanski, M.D., and Camille Hood, Ph.D., were not persuasive.**

**B.     The ALJ did not consider the medical source opinions as required by 20 C.F.R. § 404.1520c.  Specifically, the ALJ's finding that the opinion of the consultative examiner was persuasive is not supported by substantial evidence.**

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a).  In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record."  20 C.F.R. § 404.1520c(b).  In addressing medical opinions

5

and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 404.1520c(b)(2).[2]  If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 404.1520c(b)(3) (internal citations omitted).

In addition, the new regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record."  20 C.F.R. § 404.1520c(b)(1).  Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source

---

[2]    The regulations explain "supportability" as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  The regulations explain "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*. "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

As one court observed, "[t]hese new regulations plainly are less demanding than the former rules governing the evaluation of medical source opinions, especially those of treating sources." *Hardy v. Commissioner of Social Security*, 554 F. Supp. 3d. 900, 906 (E.D. Mich. 2021). Nevertheless, the new regulations set forth a minimum level of articulation for a reviewing court. *Id*.

### 1.    Dr. Wilmanski

The ALJ addressed Dr. Wilmanski's opinion as follows:

The claimant [sic] primary care physician, Charles Wilmanski, M.D., provided a signed statement in January 2020 regarding physical activity limitations (Exhibit 19F). Dr. Wilmanski offered the claimant would not be able to perform any kind of job as she would need frequent posture changes to try to relieve pain which would include changing her body position every 20 to 30 minutes. Dr. Wilmanski added the claimant would need to lie down for two or more hours during the day to obtain relief, her medications would impair her judgment and cause drowsiness, and she would be unable to get out of the house at least twice a week (Exhibit 19F). Dr. Wilmanski added it will be difficult for the claimant to reduce her BMI in part due to her medications and that exercising will make her pain worse. While Dr. Wilmanski offers an opinion on a finding that is reserved for the Commissioner, he adds there are no jobs due to the frequent need to change positions every 20 or 30 minutes. I have taken this into consideration and assigned such a limitation in the assessed residual functional capacity to allow the claimant to shift between sitting and standing every 30 minutes. I do not find his opinion persuasive as it is not supported by the record as a whole which suggests the claimant's pain has improved injections, thus being able to move and lose weight. Furthermore, Dr. Wilmanski does not offer an explanation or supporting objective evidence as to why she will be unable to get out of the house two days per week and what objective evidence supports her need to lie down. Dr. Wilmanski does offer that mild MRI findings are not always consistent with the presented symptoms, thus she may be more limited than what the objective imaging shows. However, more recent examinations at the pain clinic support she is ambulating under her own power, reports functional improvement, and testified to being able to walk more and lose weight. Accordingly, I do not find Dr. Wilmanski's opinion

persuasive as it does not offer function by function limitations and he mainly refers
to her inability to work at any job rather than provide for limitations.

PageID.55-56.

Plaintiff states that the ALJ did not address her pain or medication side effects, and

that Dr. Wilmanski's findings are consistent with the findings of orthopedic specialist Grant

Bowman, M.D., who had treated plaintiff's knee conditions.  In this regard, plaintiff contends that

she would need "to lie down due to fatigue and /or drowsiness from her Fentanyl, Gabapentin and

Xanax."  Plaintiff's Brief (ECF No. 14, PageID.879).

With respect to pain and medication side effects, the ALJ noted that,

In July 2019, the claimant reported only moderate improvement with injections and
wanted an increase in her fentanyl patch (Exhibit 10F/108). Despite her reporting
better results from an injection in August 2019, in October 2019, the claimant
wanted to switch back to Dilaudid from Fentanyl (Exhibit 10F/119).

PageID.53.  Dr. Wilmanski reduced the prescription for a fentanyl patch, but could not recall the

nature of a reported side effect related to the reduction.  PageID.855. The medical records indicate

that plaintiff reported nausea with the higher dose, so the fentanyl patch was reduced on October

17, 2019.  PageID.616.  While the doctor stated plaintiff "does take other medicines that could

impair her judgment or ability to function" and "a fairly high dose" of Gabapentin which "would

make a lot of people tired" (PageID.856), plaintiff has not offered evidence that she suffered from

debilitating side effects from these other medications.  Based on this record, the Court concludes

that the ALJ's evaluation of Dr. Wilmanski's opinion is supported by substantial evidence.

Accordingly, this claim of error is denied.

### 2.     Dr. Hood

The ALJ addressed Dr. Hood's treatment and opinion as follows:

The claimant testified to behavioral health services and the record reflects
treatment through Avalon Behavioral Health (Exhibit 13F). During the years 2017

and 2018, her treatment was sporadic with months between services (Exhibit 13F/4). However, in 2019, after her alleged onset date, there is note of a Social Security Determination (Exhibit 13F/4). Thereafter, the record indicates the claimant presented more often for treatment (Exhibit 13F).  While the record provides the claimant's treatment plan with her provider, Camille Hood, Ph.D., it does not include actual treatment notes or mental status examinations. Rather, the observations by her primary provider indicate her mental status is largely unremarkable with normal mood and affect. Dr. Hood indicates much of her treatment focuses on her marriage with a man who has addiction problems (Exhibit 3F/3). Dr. Hood provided a mental residual functional capacity assessment in November 2019 (Exhibit 11F; 13F/5-7). In completing this check box form, she indicated the claimant was unable to meet competitive standards in several areas needed to do unskilled work. Other categories were limited with notations that it depends on her pain levels whether she can complete work. Dr. Hood added the claimant has moderate limitation in understanding, remembering and applying information, and marked limitation in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. Dr. Hood further opined she would be absent more than four days per month. I do not find this opinion persuasive as Dr. Hood provides no support from her own observations or treatment notes. She does not indicate why she would be absent more than four times per month and focuses more on the claimant's pain level that would interfere with work activities. While the claimant participates in mental health treatment, she has not required emergent crisis care or inpatient psychiatric treatment. In addition, observations from other providers indicate normal mood and affect and normal judgment (Exhibit 10F/118, 123, 128). Accordingly, I do not find Dr. Hood's work preclusive limitations persuasive as they are not supported or consistent with her own progress notes or the record as a whole.

PageID.49.

Plaintiff points out that the ALJ did not consider her depression or anxiety to be severe impairments and that Dr. Hood concluded that plaintiff had "no useful ability to function"[3] in her ability to "[p]erform at a consistent pace without an unreasonable number of and length of rest periods" (PageID.622).  Plaintiff's Brief at PageID.881.

Based on this record, the ALJ could properly conclude that Dr. Hood's limitations were not persuasive.  These limitations appear in a check box form with no narrative to explain the extreme limitations set forth in the opinion.  ALJs are not bound by conclusory statements of

---

[3] The form defined the phrase "No useful ability to function" as "an extreme limitation, means your patient cannot perform this activity on a regular, reliable and sustained schedule in a regular work setting."  PageID.622.

doctors, particularly where they appear on "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation. "Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's check-off form of functional limitations that did not cite clinical test results, observations, or other objective findings[.]" *Ellars v. Commissioner of Social Security*, 647 Fed. Appx 563, 566 (6th Cir. 2016) (internal quotation marks omitted).

In addressing Dr. Hood's opinion, the plaintiff refers briefly to DDS consultant Timothy Strange, Ph.D., stating that the ALJ gave stricter scrutiny to Dr. Hood's opinion, and that if the opinions had been judged equally the ALJ would have found that she has significant limitations from depression and anxiety. PageID.881-882. In reviewing plaintiff's condition, Dr. Strange reviewed Dr. Hood's progress notes documenting anxiety and depression.[4] PageID.445. Dr. Strange concluded that,

> Claimant showed mild limitations with use of working memory, ability to retain information, etc. There were mild limitations with ability to work at pace and mentally focus. No limitations with her ability to be socially appropriate, request help, etc. Adaptation is mildly limited.

PageID.448. The ALJ addressed Dr. Strange's opinion as follows:

> In March 2019, the claimant participated in a psychological consultative examination with Timothy Strange, Ph.D. (Exhibit 6F). The claimant reported depression and anxiety over health [sic] and "not being able to do things." She added being treated at Avalon Behavioral health, but denied psychiatric hospitalizations. She reported having friendships, spending time with them once per month and she was observed relating fine with office staff. Her mental status examination was largely unremarkable and she was assessed with persistent depressive disorder and generalized anxiety disorder (Exhibit 6F). Dr. Strange noted the claimant showed mild limitations with use of working memory, ability to retain information. Dr. Strange added there were mild limitations with the ability to work at pace and mentally focus, but no limitations with her ability to be socially appropriate and request help. Dr. Strange also found adaption is mildly limited.

---

[4] The Court notes that while plaintiff told Dr. Strange that she began treatment with Dr, Hood "probably close to ten years ago," plaintiff's counsel stated that she saw Dr. Hood at times during three years (2017, 2018 and 2019). PageID.881.

> (Exhibit 6F). I find Dr. Strange's assessment of no more than mild functional limitations consistent with his observations as well as her conservative treatment. He had the opportunity to examine the claimant in person prior to providing his opinion. Her treatment is conservative with no exacerbations that have required emergent crisis treatment or inpatient psychiatric care.

PageID.48-49.

To the extent plaintiff contends that the ALJ found depression and anxiety as non-severe impairments, this finding is not an error requiring reversal. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). As discussed, the ALJ found that plaintiff had severe impairments. PageID.48. Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.* "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). *See Hedges v. Commissioner of Social Security*, 725 Fed. Appx. 394, 395 (6th Cir. 2018) (whether the ALJ characterized the claimant's mental-health impairments as severe or non-severe at step two was "legally irrelevant" when the claimant had severe physical impairments and the ALJ considered the limiting effects of all of the claimant's impairments, including those that were not severe, in evaluating the claimant's ability to work in step four) (citing 20 C.F.R. § 404.1545(e)).

Here, the ALJ stated that the RFC assessment reflects her findings with respect to the non-severe impairments of depression and anxiety, *i.e.*, that these diagnoses result in only mild limitations in understanding, remembering or applying information, mild limitations in concentrating, persisting and maintaining pace, and mild limitations with adapting or managing herself.   PageID.49-50.   In this regard, the ALJ pointed out that plaintiff can function independently, take medications, attend medical appointments, manage finances, follow instructions, and interact with others.  PageID.49-50.  While plaintiff reported motivation issues, she can watch television, read, and walks to lose weight.  PageID.50.  Plaintiff can also attend to her personal care and shop for necessities.  *Id.*   In short, the ALJ considered plaintiff's mental impairments but ultimately determined that mild impairments did not affect her RFC. The ALJ's determination is supported by substantial evidence.  Accordingly, this claim of error is denied.

### C. The RFC determination failed to consider all plaintiff's well-documented impairments as required by 20 C.F.R. § 404.1520a and Social Security Rulings (SSR) 98-6p and 85-15.

As discussed, the ALJ addressed the limitations identified by Dr. Wilmanski and Dr. Hood.  Plaintiff contends that the ALJ did not properly address the complications caused by her severe obesity, weighing 352 pounds at one point.  PageID.883.  Contrary to this contention, the ALJ noted that plaintiff's "medical history is significant for obesity" and found this to be a severe impairment.  PageID.48, 54.  The ALJ explicitly addressed this impairment:

> [O]besity can cause limitation of function in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balancing, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected. The combined effects of obesity with other impairments may be greater than might be expected without obesity. . . The medical evidence reflects that the claimant's medical history is significant for obesity and accordingly, I find that in the instant case, there is an indication of such limitations.

Accordingly, obesity has been considered in conjunction with the claimant's other impairments when determining the residual functional capacity cited above.

PageID.54.  Based on this record, the RFC accounted for plaintiff's limitations which the ALJ found to be supported by substantial evidence.  Accordingly, plaintiff's claim of error is denied.

> **D.    The ALJ did not comply with 20 C.F.R. §404.1529 when she addressed plaintiff's subjective symptoms, and her corresponding conclusions are not supported by substantial evidence.**

While it is well-settled that pain may be so severe that it constitutes a disability, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." *Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A).  The agency regulations provide that, "[i]n evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."  20 C.F.R. § 404.1529(c)(1).

The agency considers both "objective" medical evidence and "other evidence".  20 C.F.R.  §404.1529(c)(2)-(3).  "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption."   20 C.F.R. §404.1529(c)(2).

"Other evidence" includes "other information you may submit about your symptoms".  *See* 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).

> Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any

13

measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

*Id.*

The ALJ identified plaintiff's alleged symptoms as follows:

The claimant is a morbidly obese female who alleges disability as a result of anxiety, depression, back pain with numbness down top of thigh, fracture of the subchondral lateral tibeal plateau, and morbid obesity (Exhibit 1A). She further asserts these conditions limit her ability to lift, squat, bend, stand, reach, use her hands, walk, sit, kneel, climb stairs, complete tasks, concentrate, understand, follow instructions, and get along with others.

PageID.51.

With respect to the objective medical evidence, the ALJ found that plaintiff had severe impairments of degenerative disc disease of lumbar spine; osteoarthritis of bilateral knees; right calcaneal spur; and morbid obesity.  PageID.48.  As discussed, the ALJ also considered plaintiff's non-severe impairments.  With respect to the other evidence, the ALJ found,

In evaluating the claimant's consistency of subjective allegations with the evidence of the record, I first reiterate that the clinical examination findings do not fully corroborate her alleged symptoms and limitations. Indeed, the medical evidence suggests that the claimant's symptoms have been relatively well controlled when with consistent treatment and taking medications as prescribed. However, the record reflects relatively infrequent medical appointments with emergent treatment or surgical intervention. The inconsistent treatment with the alleged symptoms suggest that the claimant's symptoms may not be as limiting as she has generally alleged.

The evidence raises other questions about the claimant's consistency of subjective allegations. For instance, the claimant has described other daily activities that are not limited to the extent one would expect given her allegations of disabling symptoms. These activities include, taking walks, caring for her personal hygiene, preparing simple meals, and light household chores (Exhibit 6E; Testimony). While the scope and extent of these regular activities may change from day to day, the claimant's ability to participate in such activities tends to suggest that she is far more capable than she alleges and undermines the reliability of her allegations of disabling functional limitations.

14

PageID.54-55.  The ALJ also noted that plaintiff completed her function report soon after falling and injuring her right knee and that report does not take into account improvement reflected in the medical record.  PageID.55.  The ALJ considered both the objective and subjective evidence in addressing plaintiff's application for disability.  Accordingly, this claim of error is denied.

## IV.    CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.

Dated: September 29, 2022                          /s/ Ray Kent
                                                  RAY KENT
                                                  United States Magistrate Judge